# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# CASE NO. 5:12-CV-00090-RLV-DSC

| | |
|---|---|
| WESTON B. MULLIS, LAURA G. MULLIS, AND WENDELL K. LONG AS TRUSTEE OF L26128117112HCL LAND TRUST, <br><br> Plaintiffs, <br><br> v. <br><br> FIRST CHARTER BANK, FIRST HORIZON ASSET SECURITIES, INC., AND FIRST HORIZON ALTERNATIVE MORTGAGE TRUST 2006-FA1, <br><br> Defendants. | **MEMORANDUM AND ORDER** |

**THIS MATTER** is before the Court on the Motion to Dismiss of Defendants First Horizon Asset Securities, Inc. ("First Horizon"), and First Horizon Alternative Mortgage Trust 2006-FA1 ("Alternative Trust"), filed on August 1, 2012, pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 6.) Plaintiffs' response to such Motion was due to be filed not later than August 21, 2012. *See* W.D.N.C. Civ. R. 7.1(E). The deadline has passed with no response having been filed.[1]

## I. FACTUAL AND PROCEDURAL BACKGROUND

On December 13, 2005, Plaintiff Weston Mullis ("W. Mullis") executed a promissory note ("Note") for $284,000 in favor of First Charter Bank ("First Charter"), promising to repay a loan given to secure the purchase of property located at 261 Honey Creek Loop, Mooresville, North Carolina, 28117 ("Property"). (Doc. 1-2 at 5–7.) This Note was secured by a Deed of Trust

---

[1] "If the merits are at issue, the mere fact that a motion to dismiss is unopposed does not relieve the district court of the obligation to examine the complaint itself to see whether it is formally sufficient to state a claim." *Vega-Encarnacion v. Babilonia*, 344 F.3d 37, 41 (1st Cir. 2003).

executed on December 13, 2005. The Deed of Trust was signed by Plaintiffs W. Mullis and Laura Mullis, and was executed in favor of Mortgage Electronic Registration Systems, Inc. ("MERS"), as the nominee for First Charter and all its successors and assigns. (Doc. 7-2 at 1, 2.)

Though no documentation is attached to either the Complaint or Motion, Plaintiff alleges that the Note was securitized "on or about February 1, 2006 into the Defendant [First Horizon Alternative Mortgage Trust 2006-FA1]." (Doc. 1-2 ¶ 9.) Subsequent to the securitization of the Note, on May 10, 2012, MERS assigned First Charter's interest in the Deed of Trust to Defendant Alternative Trust via its trustee, The Bank of New York Mellon f/k/a The Bank of New York.[2] (Doc. 7-3.)

On January 17, 2012, the Mullises deeded the Property to Plaintiff Wendell K. Long as Trustee of L26128117112hcl Land Trust by way of a general warranty deed. (Doc. 1-2 at 10–11.) The Mullises did not obtain permission from the original lender or the Defendants before executing said deed, nor did they pay the balance of the Note.

Plaintiffs filed the instant action on June 1, 2012, in the Superior Court of Iredell County, asking that court to declare the mortgage null and void and to find and confirm free and clear title in fee simple to the Property in Plaintiffs' names. (Doc. 1-2.)

On July 7, 2012, Defendants properly removed the action to this Court. (*See generally* Doc. 1.) After filing an acceptable motion for an extension of time, Defendants filed a timely motion to dismiss for failure to state a claim upon which relief may be granted. (Docs. 4, 4-1, 5, 6.) The Court will now decide this motion on the merits.

---

[2] More fully, The Bank of New York Mellon f/k/a The Bank of New York is Trustee for the Holders of the Certificates, First Horizon Mortgage Pass-Through Certificates Series FHAMS 2006-FA1, by First Horizon Loans, a division of First Tennessee National Bank Association, Master Servicer, in its capacity as Agent for the Trustee under the Pooling and Servicing Agreement. (*See* Doc. 7-3.)

## II. STANDARD OF REVIEW

A motion filed per the Federal Rule of Civil Procedure 12(b)(6) challenges the legal sufficiency of a complaint, *Jordan v. Alternatives Res. Corp.*, 458 F.3d 332, 338 (4th Cir. 2006), measured by whether it meets the standards stated in Rule 8 (providing generals rules of pleading), Rule 9 (providing rules for pleading special matters), Rule 10 (specifying pleading form), Rule 11 (requiring the signing of pleading and stating its significance), and Rule 12(b)(6) (requiring that a complaint state a claim upon which relief can be granted), *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). While a complaint need not contain detailed factual allegations, the courts require more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (applying Rule 8).

"Federal Rules of Civil Procedure 8(a)(2) requires only a 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Id.* (quoting Fed.R.Civ.P. 8(a)(2) and *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The decisive standard is that the combined allegations, taken as true, must state a "plausible," not merely conceivable, case for relief. *Sepúlveda–Villarini v. Dep't of Educ. of P.R.*, 628 F.3d 25, 29 (1st Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (citations omitted)). To have facial plausibility—a standard that lies between the outer boundaries of a probability requirement and the mere possibility of unlawful conduct—the pleading must contain factual content that permits the court, using its "judicial experience and common sense," reasonably to infer the defendant's liability. *Id.*

III. DISCUSSION

Plaintiffs offer two rationales to support their conclusion that proper legal title lies with Plaintiffs free of any cloud from the Defendants: (1) "Because the ownership of the Deed of Trust and the Note have been bifurcated and are not together with the same entity, the Deed of Trust has been rendered void and a nullity and constitutes a cloud on [Defendants'] title"; and (2) "[w]ithout the [original wet ink] note, Defendant and Unknown owners do not have any legal or equitable right, claim or interest in the real estate." (Doc. 1-2 at 3.)

Defendants respond by alleging that Plaintiffs have relied on both factually and legally deficient information in stating their claim, and, therefore, that "the Complaint must be dismissed in its entirety with prejudice." (Doc. 7 at 3.) Specifically, Defendants allege that (1) Plaintiffs are factually incorrect in pleading that "the Plaintiffs['] Deed of Trust remained owned by Defendant First Charter," (2) Plaintiffs are erroneous in their assertion that the securitization and the subsequent bifurcation of their loan rendered the Note and Deed of Trust unenforceable, (3) Plaintiffs are incorrect in alleging that Defendants must produce the original Note, and (4) Plaintiffs have not sufficiently stated a proper claim under the requirements of a quiet-title action. (Doc. 7 at 5–9.)

A. Factual Inaccuracies Within Plaintiffs' Complaint

While the Court is generally required to accept all of the factual allegations within the Complaint as true and to construe such facts in the light most favorable to Plaintiff, *GE Inv. Private Placement v. Parker*, 247 F.3d 543, 548 (4th Cir. 2001), the Defendants are correct in claiming that there are limits to such a charge. (*See* Doc. 7 at 5.) It is the policy of federal courts to interpret Rule 12(b)(6) as, at its bare minimum, meaning "that plaintiffs may proceed into the litigation process only when their complaints are justified by both law and fact." *Francis v.*

*Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009). To be justified by fact, courts must not overlook "conclusory, unwarranted deductions of fact, or unreasonable inferences," nor must we "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002).

Relying on *Veney*, Defendants urge this Court to find that paragraph twelve of the Complaint, which states that "[t]he Plaintiffs['] Deed of Trust remained owned by Defendant First Charter," contradicts public records of which this Court may take judicial notice. (Doc. 7 ¶ 12.) Defendants point to a Deed of Trust executed and recorded in the Iredell County Deed Registry on December 14, 2005, in which legal title of the Deed of Trust is explicitly granted to Alternative Trust. (Doc. 7-3 at 1.) This Court is permitted to consider the assignment of the Deed of Trust in evaluating the factual allegations found within the Complaint because (1) matters of public record are subject to judicial notice, *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007), and (2) the document is central to the Complaint and is reasonably considered authentic, *New Beckley Mining Corp. v. Int'l Union, United Mine Workers of Am.*, 18 F.3d 1161, 1164 (4th Cir. 1994).

Plaintiffs rely on Defendants' alleged bifurcation of the Note and Deed of Trust in arguing that such bifurcation renders Defendants' claim on the Property inconsequential. (Doc. 1-2 ¶ 13.) First Charter's interest in the Deed of Trust having been assigned to Alternative Trust, this argument fails. In any event, such a claim would find no support in the law.

B. Securitization and Bifurcation of Notes and Deeds of Trust

Defendants allege there are two legal misstatements found within the Complaint: (1) that securitization of a mortgage loan automatically renders the corresponding promissory notes and

5

Deeds of Trusts null and void, and (2) that bifurcation, or the "splitting," of a note and deed of trust between two separate legal possessors renders each null and void.

1. The Securitization of Notes and Its Legal Effects

Defendants' Motion and supporting brief interprets the Complaint to "be based on the premise that the securitization of their loan somehow rendered the Note and Deed of Trust unenforceable." (Doc. 7 at 6.) In alleging simply that the Note was securitized (Doc. 1-2 ¶¶ 8–10), Plaintiffs have merely relayed the factual history of such Note in proffering their bifurcation theory (Doc. 1-2 ¶ 13). Plaintiffs' potential entitlement to relief hinges only upon this nullity-by-bifurcation theory.

2. Bifurcation of the Note and the Deed of Trust, and Its Legal Effects

Plaintiffs declare—counterfactually—that "[b]ecause the ownership of the Deed of Trust and the Note have been bifurcated and are not together with the same entity, the Deed of Trust has been rendered void and a nullity and constitutes a cloud on title." (Doc. 1-2 ¶ 13.) In response, the Defendants point out that "Plaintiffs cite no legal authority in support of their 'split the note' theory that bifurcation of the Note and Deed of Trust renders the mortgage null and void." (Doc. 7 at 5.)

The Court agrees with Defendants that no legal authority, either cited by Plaintiffs or found by this Court, supports the Plaintiffs' naked assertion. Essentially, Plaintiffs allege that when First Charter assigned the Note to Defendant Alternate Trust, the right to enforce the obligations of the Note as provided for in the Deed of Trust did not carry. (*See* Doc. 1-2 ¶ 13.) Presiding over this case solely on diversity of citizenship grounds, this Court is compelled to apply North Carolina law in determining the validity of Plaintiffs' legal assertion. *See* 28 U.S.C. § § 1332(a) and 1441(b); *see also Erie R.R. v. Tomkins*, 304 U.S. 64, 78 (1938).

There can be no doubt regarding First Charter's right to transfer the Note in the first place. First, North Carolina law allows for the transfer as a vehicle for facilitating commerce. *See* N.C. Gen. Stat. § 25-3-201(b) ("If an instrument is payable to bearer, it may be negotiated by transfer of possession alone."); *see also* N.C. Gen. Stat. § 47-17.2 ("A transfer of the promissory note or other instrument secured by the deed of trust, mortgage, or other security interest that constitutes an effective assignment under the law of this State shall be an effective assignment of the deed of trust, mortgage, or other security instrument."); *see also In re Yopp*, 720 S.E.2d 769, 774 (N.C. 2011) (holding that a bank that merged with the holder of a promissory note had all the rights of a note holder). Additionally, the Note itself makes explicit reference to its transferability. (*See* Doc. 1-2 at 5) ("I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the 'Note Holder.'").

In turning to what rights and obligations survive the transfer, North Carolina has long held that when dealing with negotiable instruments, "The maker's engagement, his rights, and his obligations, cannot be varied by a transfer." *Jarvis v. McMain*, 10 N.C. (3 Hawks) 10, 10 (1824). Moreover, "[t]ransfer of an instrument, whether or not the transfer is a negotiation, vests in the transferee *any right of the transferor to enforce the instrument* . . . ." N.C. Gen. Stat. § 25-3-203 (emphasis added).

Plaintiffs appear to contend that, under the Note, the Deed of Trust, and North Carolina law, only First Charter as the original lender had the authority to assert any interest against the Property. The Fourth Circuit application of Virginia law to a similar case is informative:

> It is difficult to see how [Plaintiffs'] arguments could possibly be correct. [The] note plainly constitutes a negotiable instrument . . . meaning it was . . . enforceable by whoever possessed it. . . . [B]oth the note and deed of trust

7

demonstrate that the parties intended to allow the documents to be freely transferred.

*Horvath v. Bank of N.Y., N.A.*, 641 F.3d 617, 623 (4th Cir. 2011) (applying Virginia law). Moreover, North Carolina has long held that "[w]hen two or more papers are executed by the same parties at the same time, or at different times, and show on their faces that each was executed to carry out the common intent, they should be construed together." *J.I. Case Co. v. Cox*, 178 S.E. 585, 586 (N.C. 1935); *see also Horvath*, 641 F.3d at 623 ("[D]eeds of trust and mortgages are regarded in equity as mere securities for the debt, and whenever the debt is assigned the deed of trust or mortgage is assigned or transferred with it.") (quoting *Williams v. Gifford*, 124 S.E. 403, 404 (Va. Spec. Ct. App. 1924)).

In *Horvath*, 641 F.3d at 623, the Fourth Circuit further found that "the text of the deed of trust envisions that it will be conjoined with the note." The text addressed in that case is identical to the text of the Deed of Trust at issue here: "The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower." (Doc. 7-2 at 11); *Horvath*, 641 F.3d at 623. The Fourth Circuit found such a "provision to belie[] any contention that the note is somehow walled off from the deed of trust." *Id.*

Thus, both Fourth Circuit precedent and North Carolina law refute what the Plaintiffs claim: even if bifurcation had taken place, the rights and obligations of the Deed of Trust would in fact carry, whether or not it was recorded, when First Charter transferred the Note to Defendant Alternate Trust. *See* N.C. Gen. Stat. § 47-17.2 ("It shall not be necessary in order to effect a valid assignment of a note and deed of trust, mortgage, or other agreement pledging real property or an interest in real property as security for an obligation, to record a written assignment in the office of the register of deeds in the county in which the real property is located.").

As the Fourth Circuit points out, this view is not just legally correct, but logically inevitable:

> Indeed, common sense suggests that things could not be any other way. If [Plaintiff] were correct in asserting that the transfer of a note splits it from the deed of trust, there would be little reason for notes to exist in the first place. One of the defining features of notes is their transferability, but on [Plaintiff's] view, transferring a note would strip it from the security that gives it value and render the note largely worthless. This cannot be—and is not—the law.

*Horvath*, 641 F.3d at 624. For the foregoing reasons, Plaintiffs rely on an incorrect legal principle, and as such, any claim relying upon such principle fails. Therefore, Plaintiffs' claim based upon a so-called bifurcation theory of nullity fails.

C. Possession of the "Wet Ink" or Original Note

Plaintiffs' additionally plead that "Defendant's ability to retain right, title and interest to the property cannot be maintained without the original note." (Doc. 1-2 ¶ 16.)

*Dobson v. Substitute Trustee Services, Inc.*, establishes that, in North Carolina, arguing that a defendant has "not proven that it is the holder of the note because it failed to produce the original note" is "unavailing." *Dobson v. Substitute Trustee Servs., Inc.*, 711 S.E.2d 728, 730 (N.C. Ct. App. 2011). Specifically, North Carolina "[c]ourt[s] [have] held that where there is no evidence that photocopies of a note or deed of trust are not exact reproductions of the original instruments, a party need not present the original note or deed of trust . . . ." *Id.* Here, Defendants have produced a signed photocopy, and the Plaintiffs have put forth no evidence tending to suggest that the copy is not an exact reproduction. (*See* Doc. 7-1.)

Because current North Carolina case law refutes Plaintiffs' suggestion that the original Note must be produced in order for Defendants to assert a legal interest in the Property, Plaintiffs have failed to state a claim upon which relief may plausibly be granted. Therefore, this claim shall likewise be dismissed.

D. Elements of a Quiet Title Action

A quiet title action in the state of North Carolina places the burden of proof on the Plaintiff to establish his or her title. *Heath v. Turner*, 308 S.E.2d 244, 247 (N.C. 1983). "Traditional methods" of proving title, as defined by North Carolina courts, comprise a number of different options. *See Heath*, 308 S.E.2d at 247–48 (enumerating six separate traditional methods of showing *prima facie* title available to a plaintiff in a quiet title action). Here, it is apparent that Plaintiffs have opted to attempt to establish a prima facie showing of title by "connect[ing] the defendant with a common source of title and show[ing] in [themselves] a better title from that source." *Id.* at 248. In other words, the Plaintiffs must plausibly assert superior title by disproving the validity of Defendants' title. *See Water v. Pittman*, 118 S.E.2d 395, 398 (N.C. 1961) ("[I]n an action in ejectment, or to remove cloud from title, the burden is on the plaintiff to establish his or her superior title."). The Plaintiffs have not done so here.

Instead, the Plaintiffs have attempted to disprove Defendants' "common source of title" and establish a superior title by relying on factual inaccuracies, tenuous and inaccurate statements of legal theory, and conclusory legal statements. Therefore, Plaintiffs have not stated, in part or as a whole, a claim upon which relief may be granted.

IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that the Defendants' Motion to Dismiss (Doc. 6) be **GRANTED**. The Complaint is hereby **DISMISSED with prejudice**.

Signed: July 29, 2013

Richard L. Voorhees
United States District Judge

10